**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 26-132** |
| **JACOB BOGATIN** | : | |

**GOVERNMENT'S CHANGE OF PLEA MEMORANDUM**

## I. BACKGROUND

Defendant Jacob Bogatin was charged by information with four counts of theft of government money (18 U.S.C. § 641) based on multiple false and misleading business loan applications that he caused to be submitted to the federal Economic Injury Disaster Loan ("EIDL") program, a pandemic-era program that was designed to provide financial relief to struggling businesses. The defendant and the government have executed a written guilty plea agreement by which the defendant has agreed to plead guilty to all four counts in the information. A change of plea hearing is scheduled for July 28, 2026.

## II. APPLICABLE STATUTE AND ESSENTIAL ELEMENTS OF THE OFFENSE

To obtain a conviction theft of government money in violation of 18 U.S.C. § 641, the government must prove beyond a reasonable doubt that the defendant:

1. The money or thing of value described in the information belonged to the United States;
2. The money or thing of value had a value that exceeded $1,000;
3. The defendant stole, embezzled, or knowingly converted that money or thing of value to his own use or the use of another; and

4. The defendant did so knowingly with the intent to deprive the owner of the use or benefit of that money or thing of value.

*See* Pattern Criminal Jury Instructions of the Seventh Circuit.

## III. MAXIMUM PENALTIES

The maximum penalty for each count of theft of public money is ten years' imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment. Therefore, the total statutory maximum sentence faced by the defendant is 40 years' imprisonment, 3 years of supervised release, a $750,000 fine, and a $400 special assessment.

## IV. FACTUAL BASIS FOR THE PLEA

If this case were to proceed to trial, the government would prove the following facts, among others, through witness testimony and exhibits. This memorandum sets forth only the essential facts that would need to be proved to establish the elements of the offenses charged.

Witness testimony would establish that on March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") was enacted to provide emergency assistance for individuals, families, and businesses affected by the coronavirus pandemic. The EIDL program was a CARES Act initiative that provided low-interest loans to struggling businesses. The basic formula that was used to determine the loan amount the applicant qualified for was gross revenue for the 12 months preceding January 31, 2020, minus cost of goods sold for this time period, divided by 2 (because the program originally only compensated for 6 months of economic harm, not a full 12 months). The EIDL program relied in large part on the honesty of the applicant in providing truthful gross revenue and cost of good sold information. Of course, the EIDL program was designed to fund businesses that were operational at the time of the submission; applicants were not permitted to seek

reimbursement for businesses that had failed or closed before the pandemic began.

Witness and agent testimony, bank and loan records, and electronic correspondence would show that the defendant submitted seven false or misleading EIDL loan applications that were funded and never repaid, causing a total of $962,400 of actual loss to the government. All of these applications were submitted in the names of individuals other than the defendant, although the defendant orchestrated and caused the filing of each one. Four of these fraudulent loan applications are charged in the information.

**A. EIDL Application for BNG Group LLC (Count One)**

Records and testimony would establish that the defendant caused an entity called BNG Group LLC to submit an EIDL application on May 14, 2020. The application identified three alleged employees and claimed to be a "Property Management/Realty" business. The application listed gross revenue from January 31, 2019, to January 31, 2020, as $480,000, and cost of goods sold for that period as $28,000.

The trial evidence would show that this application was false because these revenue figures were materially inflated. Moreover, the defendant never intended to use the proceeds of this loan to support the business of BNG Group; rather, he intended to use the proceeds of this loan to help purchase a piece of commercial real estate in Virginia ("the Virginia property"). Business and bank records would establish that the defendant was awarded a $150,000 loan and that he did, in fact, use the proceeds to help purchase the Virginia property as well as to buy inventory for a completely separate business he controlled, which business the defendant had also caused to apply for an receive a fraudulent EIDL loan.

**B. EIDL Application for Sterling Investments LLC (Count Two)**

Records and testimony would establish that the defendant caused an entity called

Sterling Investments LLC to submit an EIDL application on June 12, 2020. The application identified eight alleged employees and claimed to be a "Property Management/Realty" business. The application listed gross revenue from January 31, 2019, to January 31, 2020, as $540,000, and cost of goods sold for that period as $140,000.

The trial evidence would show that this application was false because—in addition to the fact that the defendant submitted the application in the name of another individual to mask the fact that the defendant was orchestrating the filing of multiple, overlapping EIDL applications—the defendant never intended to use the proceeds of this loan to support the business of Sterling Investments; rather, he intended to use the proceeds of this loan to purchase inventory for another, completely separate business he controlled, which business the defendant had also caused to apply for an receive a fraudulent EIDL loan (the same business that received a portion of the fraudulent loan for BNG Group). Business and bank records would establish that the defendant was awarded a $150,000 loan and that he did, in fact, use the proceeds to purchase inventory for a completely separate business that had itself received a fraudulent EIDL loan, and that he also used a significant amount of money to help purchase the Virginia property described above.

**C. EIDL Application for Legacy Aviation LLC (Count Three)**

Records and testimony would establish that the defendant caused an entity called Legacy Aviation LLC to submit an EIDL application on June 18, 2020. The application listed gross revenue from January 31, 2019, to January 31, 2020, as approximately $1.26 million, and cost of goods sold for that period as $246,700.

The trial evidence would show that this application was false because—in addition to the fact that the defendant submitted the application in the name of another individual to mask

the fact that the defendant was orchestrating the filing of multiple, overlapping EIDL applications—the defendant never intended to use the proceeds of this loan to support the business of Legacy Aviation, which the defendant himself no longer controlled, having sold his interest a year earlier. Rather, the defendant intended to use the funds to pay off "loans" that family members had made to him years earlier. Business and bank records would establish that the defendant was awarded a $150,000 loan and that he did, in fact, use the funds to make payments to his sister as well as two of his children.

### D. EIDL Application for SNB Publishing (Count Four)

Records and testimony would establish that the defendant caused an entity called SNB Publishing to submit an EIDL application on June 20, 2020. The application listed gross revenue from January 31, 2019 to January 31, 2020 as $780,000, and cost of goods sold for that period as $392,000.

The trial evidence would show that this application was false because—in addition to the fact that the defendant submitted the application in the name of another individual to mask the fact that the defendant was orchestrating the filing of multiple, overlapping EIDL applications—SNB Publishing had ceased doing business months before the defendant submitted the application. Business and bank records would establish that the defendant was awarded a $150,000 loan and that he used the proceeds to help purchase the Virginia property described above.

## V. <u>PLEA AGREEMENT</u>

The parties have executed a plea agreement, that will be presented to the Court during a hearing regarding entry of the guilty plea. The agreement includes a supplement to be filed under seal.

## VI. CONCLUSION

The government requests that the Court conduct a hearing under Federal Rule of Criminal Procedure 11 and if warranted then accept the defendant's plea of guilty.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s Matthew T. Newcomer*
Matthew T. Newcomer
Jerome Maiatico
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that this Change of Plea Memorandum has been served by email on defense counsel, Mark Wilson.

*/s Matthew T. Newcomer*
MATTHEW T. NEWCOMER
Assistant United States Attorney

DATED: July 24, 2026.